UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO

FILED
RICHARD W. NAGEL
CLERK OF COURT

2016 OCT 21 PM 5:06

U.S. DISTRICT COURT
SOUTHERN DIST. OHIO
EAST. DIV. COLUMBUS

Ragna Triplett-Fazzone, *Plaintiff* )
1543 Grandview Ave. )
Columbus, Ohio 43212 ) No. __2:16CV1016__

VS.

(11 pages)

United States of America, *Defendant*
Federal Tort Claims Act Litigation Section
Washington D.C. 20515

Judge Graham

AND

MAGISTRATE JUDGE JOLSON

The State of Ohio, *Defendant*
30 E. Broad St., Floor 14
Columbus, Ohio 43215

AND

City of Columbus (Division of Police) et.al., *Defendant*
120 Marconi Blvd
Columbus, Ohio 43215

AND

Franklin County Sheriff's Department, et.al, *Defendant*
369 S. High St.
Columbus, Ohio 43215

AND

City of Upper Arlington Division of Police, *Defendant*
3600 Tremont Road
Columbus, Ohio 43221

and

Police Officer Gregory Ellifritz, *Defendant*
3600 Tremont Road
Columbus, Ohio 43221

# COMPLAINT

This *Plaintiff* declares ALL of the following, including but not limited to:

1. In The United States of America, **The Violent Crime Control and Law Enforcement Act of 1994, H.R. 3355, Pub. L. 103-22** is an Act of Congress dealing with crime and law enforcement ; it became law in the year 1994, AD. It is the largest crime bill in the history of the United States and consisted of 356 pages that provided for 100, 000 new police officers, $ 9. 7 billion in funding for prisons and $ 6. 1 billion in funding for prevention programs which were designed with significant input from alleged experienced police officers.
2. The Violent Crime Control and Law Enforcement Act of 1994 was originally written by Senator Joe Biden representing the State of Delaware, U.S.A. ; Mr. Joe Biden represents the lawful position of Vice-President of United States of America since 2009-2016.
3. The Violent Crime Control and Law Enforcement Act of 1994 was signed into law on September 13, 1994 by President Bill Clinton, U.S.A.
4. Plaintiff's 6th District Federal Judge was appointed by President Bill Clinton. Plaintiff has never seen a Federal Judge or had been granted a Hearing, all the way to the Supreme Court, Washington,.D.C. for case # 14-806 which complains of False Arrests, Excessive Use of Force, Use of Banned Deadly Force, Police Officer "reasonableness", Pattern and Practice, and multiple Constitutional Violations.
5. This Plaintiff was born in The United States of America, as a protected citizen under The United States Constitution, State Laws, City Laws, Local Laws and Common Law. To date, Plaintiff has always been a female , minority , citizen for 48 1/2 years.
6. Title IV, the **Violence Against Women Act ( "VAWA" )**, allocated $ 1.6 billion to **help *prevent* and *investigate* violence against women**.
7. This Violence Against Women Act ( "VAWA" ) was renewed in 2000, 2005, and 2013.
8. "VAWA" , also known as **"The Safe –Streets– for Women Act"** increased **federal penalties** for repeat [sex] offenders and **requires mandatory restitution for the medical and legal costs of** [sex] **crimes**.
9. "VAWA" , also known as **"The Safe -Homes- for Women Act"** increased federal grants for **battered women's** shelters, created a National Domestic Violence Hotline, and **required for restraining orders** of one state to be enforced by the other states. It also added a [rape] shield law to the Federal Rules of Evidence.
10. Part of "VAWA" was ruled UNCONSTITUTIONAL by the Supreme Court in United States v. Morrison (2000).

11. In 1994 , the United States Congress passed the Violence Against Women Act (1994), which contained a provision at <u>42 U.S.C. Sec. 13981 for a federal civil remedy to victims of gender-based violence, even if no criminal charges had been filed against the alleged perpetrator of that violence</u>. (For example: This Plaintiff's 1st first False Arrest in **1995** with Excessive Force Brutality (with handcuffs for many hours and until Plaintiff's arms/shoulders couldn't move and were purple arriving at City of Columbus Police station) with 2 caucasian male City of Columbus "Peace Officers" ; **2010** - 2nd False Arrest with Excessive Force, Excessive Deadly Banned Force, Multiple Constitutional Violations, etc (*see* Southern District of Ohio 2:12 CV 331, U.S. Court of Appeals 13-4042, U.S. Supreme Court 14-806, 6th District Evidence File)
12. Plaintiff has *never* been charged with a crime. Plaintiff was *never* "fleeing the scene." Plaintiff was *never* "armed" or *never* considered "dangerous."
13. Plaintiff's declares that in all said incidents, stated herein, Caucasian males were always the individuals "Peace" officers, under The Color of Law, committing these **continuous and repetitive** violent and life destroying and life damaging actions: <u>on the person</u> and <u>in the life</u> and <u>lifestyle of this Plaintiff</u>.
14. **Plaintiff declares that these incidents in 1995, 2010 and 2015 were tortious actions that interfered with, denied the rights of, and damaged (and continues to interfere with, deny the rights of and damage) Plaintiff's life and family.**
15. **ALL** said unlawful Police actions against this Plaintiff (1995, 2010, 2015) occurred "on the street." As opposed to Plaintiff calling Police to her house for something. Plaintiff has not remotely had a need to call police to her home.
16. These said actions of Peace Officers, operating as paid employees of government agencies of the United States of America, State of Ohio, City of Columbus, City of Upper Arlington, violates the Equal Protection Clause of the United States Constitution among other Civil Liberties mentioned in this herein Complaint.
17. This female Plaintiff, in a clear undeniable repetitive pattern that has been inflicted upon Plaintiff's person and life's work and family, in the most unsuspecting and random times ---only--- since the date of 1995. (years 1995, 2010, 2015) has either/or been Colluded against, Legally Supressed, or the attempted extinguishment of this Plaintiff's Life, Liberty and/or Pursuit of Happiness by the above named parties, individually, collectively, or generally.
18. This Plaintiff, in a clear undeniable repetitive pattern, does not have the same, remote, identical, helpful, sincere, lawful, protection from the police on the street, or anywhere else in the United States of America, that Plaintiff would possess if Plaintiff were to call them to her home for any other domestic problem, intruder problem, car accident, or theft, etc...
19. During Plaintiff's three (3) Police encounter since 1995, the Police were the aggressor against Plaintiff, in a non-violent/threatening "street" setting, and

Plaintiff sustained (present and future) physical, mental, spiritual and financial damages.

20. This female Plaintiff, in a clear undeniable repetitive pattern, does not qualify, in the United States of America, to obtain legal assistance for *or* a remedy to: this sort or type of legal contest, legal damage, gross policing negligence, gross judicial negligence, judicial bias, judicial misconduct, or multiple-repetitive-accumulating-sustaining-overlapping-permanent life, family and extended family damages caused and named in this Plaintiff's Complaint.

21. Additionally, The Violent Crime Control and Law Enforcement Act of 1994, embracing and providing for The Violence Against Women Act does not exceed Congressional power under the Commerce Clause and the Equal Protection Clause, because the "enumerated powers" that *limit* Federal power, in order to maintain "a distinction between what is truly national and what is truly local" have been severely abused. Plaintiff declares that all activity listed in this Complaint, including but not limited to this complaint, in its entirety, is personally damaging, life altering, physically altering, directly economically damaging in nature, sometimes not directly economic in nature and containing *indirect* economic consequences, to all women or persons residing in this United States of America during this 1994-2016.

22. **Plaintiff is part of her economic household with 3 biological minor children (2010, 2015) and 3 "step" minor children ( 2010, 2015). This Plaintiff's life stage each and every time in 1995, 2010 and 2015 was considered ½ of the driving force of her household *present and future* status, and ½ of the children's lifetime need in education, love, nurturing, companionship, creativity, safety and mentoring.**

23. **It is UNCONSTITUTIONAL that Congress is "*appropriating* State police powers under the guise of regulating commerce" See Lopez when it is people, such as this Plaintiff, who are the individuals that drive the United States commerce (work force & consumer spending) and are the very individuals who create the United States commerce majority at times according to U.S. Labor & Statistics.**

24. The Violent Crime Control and Law Enforcement Act of 1994, is **UNCONSTITUTIONAL** in its entirety because it is an "unmanned" , "unmanaged" , "highly improper" and "ignorant" and therefore "unethical toward the delicate nature of life" method of police control that has contributed to the current national policing deaths (citizens v. police ) (police v. citizens) all the while, damaging Plaintiff's life repetitively (1995, 2010, 2015).

25. The Violent Crime Control and Law Enforcement Act of 1994, is **UNCONSTITUTIONAL** because Plaintiff plead this aspect of --- law--- "The Violence Against Women Act" in the very pleadings of her own case no. 2:12 CV 331 under a Democratic Federal Judge that was appointed by President Bill Clinton (D) , and that said series of Plaintiff's pleadings remained moot, unmoved, stale, irrelevant, without dignity, without merit, void of importance,

and lacking relevant consideration as it effects and affects all aspects of Plaintiff, and society in general.

26. The Violent Crime Control and Law Enforcement Act of 1994, in paramount, is wholly UNCONSTITUTIONAL because this female minority injured Plaintiff cannot ever successfully have ANY civil or criminal remedy to ALL of Plaintiff's pleadings thus far to the U.S. Supreme Court, since the very individuals that are repetitively injuring Plaintiff's life are the very Police who are inflicting The Violent Crime or The Violent Crime Bill of 1994's methods and operations onto Plaintiff during a law enforcement action that has never been criminal in nature.

27. The Violent Crime Control and Law Enforcement Act of 1994 & The Violence Against Women Act (VAWA), are opposing LEGAL PLATFORMS and UNCONSTITUTIONAL in nature, in an anticipated legal context *or* an actual/literal legal contest of Police Brutality, Excessive Force, Use of Force, Use of Banned Deadly Force, False Arrests and Constitutional Violations when women's lives (biological or transgender) are damaged from police violence and/or police violent crimes and cannot find redress, via legal counsel (throughout) *or* in the United States legal system (throughout). There is absolutely no redress or remedy of damages found in the legal metrix, matrix or judicial law pertaining, at minimum or at the maximum list of events pertaining to this Plaintiff, as it is only found for DECEASED persons of policing damage to one's life, liberty and pursuit of happiness.

28. The United States of America, <u>without admittance of</u>, <u>purporting denial of</u>, and lacking complete and total human rights empathy that this Plaintiff has expressed throughout, the damaging effects that The Violent Crime Control and Law Enforcement Act of 1994 has been publicly proven in the last six years 2010-2016 that there is a national Pattern and Practice, established and widespread, that involves exactly what Plaintiff described all the way to the United States Supreme Court.

29. Plaintiff's supporting Complaint: In The United States of America, between the years 1995 and 2015, Plaintiff has now been falsely arrested and brutalized by various police officers, in the State of Ohio, within the United States of America, multiple times (three (3) in total), specifically within the following mentioned years ( 1995, 2010 and 2015 ). **AND**

30. The unlawful and deadly police misconduct (1995 and 2010) was well documented in Plaintiff's District Pleadings and Evidence Case Filings (case no. 2:12 CV 331) , U.S. Court of Appeals, Cincinnati, Ohio (case no. 13-4042) and United States Supreme Court Case, Washington, D.C.( case no. 14-806 DENIED June 9, 2015). **AND**

31. Plaintiff has additionally <u>and</u> simultaneously, (between 2012 through 2015) contacted the United States Department of Justice (U.S.D.O.J) and Federal Bureau of Investigations (F.B.I) and other notables, et cetera, without receiving

any relief whatsoever in any way, shape, or form, or protection of the mind, spirit, or physical body. **AND**

32. This Plaintiff has lawfully, and previously, brought forth 6th Circuit case law, Appeals Court Law, U.S. Constitutional Law Supreme Court case law and distinguished evidence of nationally known ---now deceased persons --- all the way to the United States Supreme Court in Washington, D.C. and has NEVER seen a Judge, had a hearing, or a trial, in/throughout Plaintiff's well documented case of damages. Bizzarely, Plaintiff's abovementioned case disposition was "open" for police misconduct, excessive use of force, use of banned deadly force and numerous constitutional violations *simultaneous to* growing and escalating national protests, and a national crisis of police abuse, misconduct, use of force, use of deadly force and numerous constitutional violations inflicted on other well publicized deceased victims.
33. Plaintiff's district case was ruled on by a Magistrate, eventhough ALL Parties stated they wanted a FEDERAL JUDGE assigned to the case (2:12 CV 331).
34. District Court accepted a two hundred-eleven page (211) deposition of Plaintiff's six hour deposition, to use during Summary Judgment, to which, was ruled against Plaintiff in the form of words that are considered protected under the 1st Amendment to the Constitution ("Freedom of Speech"). No Superior court (U.S. Court of Appeals or U.S. Supreme Court) corrected this blatent disregard for Federal Rules of Evidence. (Plt. Filed many timely objections to this).
35. In all three of Plaintiff's False Arrest "street" incidents (1995, 2010, 2015), Plaintiff has NEVER had her Miranda Rights read/said to her. (Plt. Cited in District Ct, U.S. Court of Appeals, U.S. Supreme Ct).
36. To summarize, Plaintiff declares that this "1994 Crime Bill" has been implemented for 22 years on this date, October 21, 2016. It has been wholly published, wholly distinguished, wholly renewed, widely received, and nationally implemented, with an integrated and comprehensive intention to protect "women" from being victims of (or the target of) violent crimes against their person. Yet, the repeat *(non-deceased)* victim is this female Plaintiff, and the unlawful crimes are inflicted by the police, all *of* and *under* the same veil, Law and Color of Law, therefore, no "female" (Immigrant, Visitor, or Citizen) can EVER recover damages or have redress from/ against the police who damage their lives from false, brutal, unlawful misconduct, therefore this crime bill is **UNCONSTITUTIONAL**.
37. **The Violent Crime Control and Law Enforcement Act of 1994, is entirely UNCONSTITUTIONAL because ((*according to the United States Department of Labor in 2015*) 57% of women participate in the American work force and 70% of women with children under 18 years participate in the labor force)). Like this Plaintiff, many have permanent household financial obligations or physical obligations, generally 50% of child rearing or child care, potentially obligated for college finances, elderly care of parents, etc... And therefore, sabotages**

this Plaintiff's college educated "woman's ability" to get ahead of, or pursue, or maintain any status in life, within the United States or globally.

38. ALL the events Plaintiff describes throughout this Complaint occurred in The State of Ohio, City of Columbus, Franklin County, U.S.A. only.
39. The Violent Crime Control and Law Enforcement Act of 1994, is entirely UNCONSTITUTIONAL because Plaintiff cannot get a restraining order against the "police."

===============================

**Plaintiff, in combination of # 1 – 35 stated above, independently, contributing together or additionally, declares ALL of the following :**

40. That on, *October 22, 2015*, this Plaintiff was, *again*, the targeted and victimized individual of yet another Police misconduct of False Arrest (3rd), Excessive Use of Force with: Wanton infliction of pain, Inflicting deliberate indifference to Plaintiff's physical person, Inflicting deliberate indifference to Plaintiff's need to have effective courtroom evidence from dash cam audio, causing Plaintiff intentional infliction of Emotional Distress, causing Plaintiff to Suffer Mental Cruelty and Public Humiliation, causing damage to Plaintiff's Reputation, causing Plaintiff to have Defamation of Character, causing Physical damage to the already damaged body (from 2010 incident) of Plaintiff (physical, mental, spiritual), Failure of Duty of Care, Bad Faith, Coercion, Libel, Wanton and Reckless Behavior of a Peace Officer, Entrapment, Mortification, Illegally Obtaining Evidence (cell phone), Personal Retaliation, Retaliation, violation of 14th Amendment of Equal Protection of the Law, violation of 8th Amendment Cruel and Unusual Punishment, violation of Due Process "Procedural Justice" & "Retributive Justice", violation of 5th Amendment of "nor shall any person be subject for the same offence (e.g. Police Brutality) to be twice put in jeopardy of life or limb (in plain language) supported with emphasis using the 9th Amendment of "Protection of rights not specifically enumerated in the Constitution", ---*ALL* Under the Color of Law, in the Continental United States.
41. This October 22, 2015 incident occurred during an alleged speed traffic stop, on a two lane road (25mph) in Plaintiff's beloved hometown suburb of Upper Arlington, Ohio. The incident occurred shortly after 3:00pm, on a sunny warm day, when Plaintiff was on the way to pick up her minor biological children at their school(s) in Upper Arlington, Ohio.

42. Plaintiff was <u>originally</u> only told she was "getting a [speeding] ticket." Not "30 days in jail" that the officer repetitively stated to Plaintiff when he returned with the ticket. Said police officer was asked by Plaintiff to repeat himself to Plaintiff's "husband." The officer <u>entirely</u> refused to repeat the "30 days in jail" statement or explanation to Plaintiff's "husband" who showed up on the scene, and was still there (parked behind Officer's cruiser) looking in his car for the insurance card. Said police officer stated that "he is not getting the ticket" and he unreasonably refused to cooperate with either Plaintiff's requests or fact that Officer, just minutes before, had already spoken with Plaintiff's "husband."

43. Plaintiff was continuously using non-offensive and nice cordial [English] dialogue to the said police officer "Sir", "Officer" saying "Please" and "I don't understand" on multiple occasions asking the officer to explain his reasoning to repeatedly threaten Plaintiff with "30 days in jail."

44. **ALL of the following verbal dialogue [from the Officer's personal microphone attached to his uniform or person— is *intentionally* absent and cannot be heard from the dash cam video to be used in a court of law for Plaintiff's benefit:** After Plaintiff willingly pulled over, as soon as seeing the officer behind with lights flashing, Plaintiff pulled to the side of the road near a very popular and busy intersection of Upper Arlington, Ohio ( Lane Ave and North Star Rd). Plaintiff immediately got out her driver's license and handed it to the Officer when asked. Plaintiff stated to the officer that she "did not know she was speeding." Plaintiff also stated to the officer that she "does not normally drive that car." Plaintiff also stated to the officer that she, in fact, did "own the car." Plaintiff also stated that she had grown up in Upper Arlington. That is when the officer became aggressive about how I "should know" what the speed limit was on that road. Plaintiff then stated that she "did know" what the speed limit was on that road, and "didn't know she was speeding." Plaintiff then stated that she "normally doesn't drive that car." **Unbeknown to Plaintiff though, ALL of the dialogue for about 5 – 15 minutes in the dash cam record, does NOT contain ANY of Plaintiff's first responding dialogue that would be used in a court of law for Plaintiff's traffic defense(s) for either the <u>speeding ticket</u> OR the "<u>30 days in jail</u>" <u>defense</u>.**

45. It is ONLY AFTER the officer wrote up the speeding ticket and got out of <u>his police cruiser ( for the 2nd time)</u> (to deliver the ticket to Plaintiff), that he "**turns on his personal microphone to record the conversation.**" Which is, again, unbeknown to Plaintiff, and to Plaintiff's detriment (in a court of law) *where the entire scenario had turned bad*. In other words, the Officer intentionally had not recorded the fair and pertinent details of the scope and nature of the traffic stop according to Plaintiff's actions, reasoning, and defense, reasonableness and kindness about the incident.

46. Shortly after pulling over, Plaintiff could not find the insurance card in the glove box that the officer requested, so Plaintiff called her "husband" to the scene, to bring it.
47. Plaintiff's "husband" pulled up and parked behind the Officer's cruiser. He got out of the car and explained to Officer why he was there.
48. At some point, Officer left Plaintiff's car from first responding, and Officer made contact with Plaintiff's car and inflicted a lewd sexual gesture <u>against the vehicle</u> Plaintiff was driving (as seen in the dash cam video).
49. Plaintiff had recognized Officer's last name to be the same of a previous co-worker Plaintiff had worked with between the approximate years of 1992-1998.
50. Days after this incident, Plaintiff recalled that the Officer had previously met this Plaintiff at her work between 1992-1998 and was asked out by said Officer. Plaintiff had <u>declined</u> to "go out" with him *or* consider "dating."
51. Days after this incident, Plaintiff later recalled that when said Officer visited his sister while working at Plaintiff's work location, between 1992-1998, that the 1st time Plaintiff met said Officer at Plaintiff's work, he was wearing a City of Columbus Police Uniform. Plaintiff remembers this because Plaintiff had never "met" a Columbus Police Officer before in her life.
52. The said Officer never stated "that by signing the ticket, it is not an admission of guilt."
53. The said Officer was intentionally inflicting fright and fear onto Plaintiff and confusing Plaintiff about sending her to jail for "30 days." All the while repeatedly implying that he could do it right then and there, on the scene.
54. Said Officer refused ALL of Plaintiff's polite requests for further discussion, explanation of the repeated threat of on-site "30 days in jail."
55. Plaintiff then explained she couldn't sign a ticket she didn't understand was associated with "30 days in jail." The said Officer then got even more aggressive, called for "back-up" on his walkie talkie, reached into Plaintiff's car, dragged her out and arrested her on the spot.
56. When said officer placed Plaintiff in the back of the cruiser, he AGAIN tightened the handcuff to hurt and injure Plaintiff. Plaintiff immediately recognized this to be Excessive Force with handcuff brutality, because City of Columbus had used this injury tactic on Plaintiff's experience in 2010.
57. Plaintiff became very upset and sad when illegally dragged out of her car. Plaintiff was uncontrollably crying the entire time thereafter. Only the back-up Officer stated that he would "un handcuff" Plaintiff if she would stop crying.
58. About 1 hour later, Plaintiff went to the Upper Arlington police station, and the Officer who "un handcuffed" Plaintiff stated that "you were never arrested."
59. This is a complete and direct contradiction of how many times arresting Officer stated that Plaintiff "was under arrest."

60. This said traffic stop Officer stated, in writing, on a public document, on this Upper Arlington public traffic ticket of October 22, 2016, that Plaintiff was "mentally ill." At this time, Plaintiff believes that this was put on the ticket after the False Arrest, but cannot say for sure since Plaintiff NEVER saw the ticket before the arrest occurred. Either way, it is on a public document for all to see.
61. Plaintiff's 2nd "husband" was the unfortunate and unsuspecting witness of these events in the years 2010 and 2015. The 2010 event involved the Use of Excessive Force of Banned deadly hogtying event, when Plaintiff tried to report her own stolen purse, driver's license, credit cards, cash. This 2015 event involved the traffic incident on October 22, 2015, North Star Rd, Upper Arlington, Ohio; City of Columbus, Ohio ; Franklin County.
62. Plaintiff's minor biological child witnessed the 3rd (2015) incident, as a result of the fact that his mother was Falsely Arrested with Excessive Use of Force Brutalization (of intentional tightening of handcuffs (that were already locked on) while sitting in back of cruiser) at a traffic stop, because Plaintiff was directly and intentionally on route (the typical route) to pick up her kids at school after 3:00pm. Also, during the abovementioned Upper Arlington incident, first responding dialogue with the officer, Plaintiff notified U.A. Police Officer that she had and immediate need to pick up her kids at school. And one of Plaintiff's children had to walk upon the scene as described in, herein above.
63. Due to Officer's False arrest handcuffing actions, Plaintiff suffered exacerbated neck and spinal problems that were caused by the 2010 banned hogtying event.
64. Plaintiff's three (3) minor biological children have been living with these police damaging problems in their family life since 2010. That is approximately for six (6) years as of the date of this filing (October 21, 2016).
65. Plaintiff's three (3) "step" minor children have been also adversely affected by Plaintiff's household continuing and sustaining "police related" damages since 2010.
66. Plaintiff's three (3) adult "step" children have been adversely affected by Plaintiff's household continuing and sustaining damages since 2010.
67. Plaintiff has also been living with these police damaging problems in their "step-family life" since 2010.
68. Plaintiff has been an inhabitant of The U.S.A, The State of Ohio, City of Columbus, and Upper Arlington, her entire life.
69. Plaintiff's "husband" witness of 2010 and of 2015, also has childhood roots in Upper Arlington, Ohio and City of Columbus, Ohio.
70. Plaintiff's immediate family lives in the U.S.A, The State of Ohio, City of Columbus, and Upper Arlington.
71. Since Plaintiff has already, in fact, plead in the United States District Court Southern District of Ohio (6th Circuit), and the U.S. Court of Appeals, the Law Created by current Vice President (then Senator Joe Biden of Delaware) and

signed by former President Bill Clinton the "Victims of Violent Crime Bill of 1994" is **UNCONSTITUTIONAL**. (See District record 2:12 CV 331). This is **UNCONSTITUTIONAL** because: **1.** Said crime bill is a law. **2.** Said unmanned and unmanaged crime bill is ongoing to this day, and started affecting this female (minority) Plaintiff's life, immediately, in 1995.

72. For Plaintiff and her family, these entire series of events since 1995 have been a complete character and life assassination at the very worst case scenario and level. Judicial, financial, spiritual, educational and reputation.

===========================================

**Plaintiff declares that the abovementioned "Defendants" are liable in some way, shape or form to the following Plaintiff demands:**

**WHEREFORE Plaintiff demands (1)** That any/all applicable laws, heretofore, governing the United States of America and The United States Constitutional Rights of Plaintiff on sufferance, be firmly attached and subjected to: The State of Ohio, City of Columbus, Franklin County, City of Upper Arlington (a suburb) and its Peace Officer Employee, and United States of America and **(2)** That Judgment for: Compensatory, Punitive, Economic and Non-Economic damages against United States of America, et.al., (or) State of Ohio, et. al., (or) City of Columbus Division of Police, et. al. (or) Franklin County Sheriff, et.al., (or) City of Upper Arlington (or) against Defendant(s) in the singular (or multiple) (or) against Defendant(s) combined for a total sum of $ 150,000,000.00 (One hundred fifty million U.S. Dollars) (or) the amount the jury finds appropriate, (whichever is greater), plus Court Costs and Attorney's Fees and **(3)** That these parties remained joined in this complaint **(4)** That immunity for government officials be limited, restricted or prevented given the continuous unlawful aggravated menacing and destructive scope and national magnitude of this complaint, and inability of Plaintiff to obtain legal counsel in the present ( *or* in the directly-relevant case history) and **(5)** That Police are restricted (in or near the presence of Plaintiff and family or business) for further damage to Plaintiff and family, in the cause of retaliation and inability to obtain legal counsel or otherwise **(6)** That injunctive relief be granted and **(7)** That Plaintiff be granted a Trial by Jury and **(8)** Separation of witnesses.

Plaintiff has respectfully submitted, on this day October 21, 2016, this herein Complaint to the Clerk of Courts in the United States District Court, Southern Division, Ohio.

X _(signature)_ , Pro Se

Ragna Triplett-Fazzone