IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

RAGNA TRIPLETT-FAZZONE,

    **Plaintiff,**

v.

    Civil Action 2:16-cv-1016
    **CHIEF JUDGE EDMUND A. SARGUS, JR.**
    Magistrate Judge Kimberly A. Jolson

**UNITED STATES OF AMERICA,** *et al.*,

    **Defendants.**

## OPINION AND ORDER

This matter is before the Court for consideration of Defendant City of Upper Arlington Division of Police and Gregory Ellifritz's Motion for Summary Judgment (ECF No. 42), Plaintiff's Memorandum in Opposition (ECF No. 44), Defendants' Reply in Support (ECF No. 45), Plaintiff's unauthorized Sur-reply (ECF No. 47), as well as Plaintiff's Objection to Court's Partial Findings, deemed a Motion to Reconsider and the Supplemental Memorandum in Support of the Motion to Reconsider. (ECF Nos. 48, 49.) For the reasons set for the below, the Court **GRANTS** Defendants' Motion for Summary Judgment and **DENIES** Plaintiff's Motion for Reconsideration.

### I.    BACKGROUND

**A. Procedural Background**

Plaintiff, Ragna Triplett-Fazzone ("Plaintiff"), filed this action, and has since proceeded, without the assistance of counsel. In her Complaint, Plaintiff named as defendants the United States of America, the State of Ohio, the City of Columbus, the Franklin County Sheriff's Office, the City of Upper Arlington Division of Police, and an Upper Arlington Police Officer.

On January 19, 2017, the State of Ohio and the City of Columbus each filed a Motion to Dismiss (ECF No. 9, 11), and on January 25, 2017, the United States also filed a Motion to Dismiss (ECF No. 17). On February 13, 2017, Plaintiff responded in opposition to the motions of the State and the City. (ECF No. 20.) Then on February 17, 2017, Plaintiff filed a second Memorandum in Opposition to the Motions to Dismiss of the State and the City (ECF No. 21), and a Memorandum in Opposition to the Motion to Dismiss of the United States (ECF No. 22). On that same day, Plaintiff filed an Amended Memorandum in Opposition to the Motions to Dismiss of the State, City, and the United States. (ECF No. 23.)

On February 24, 2017, the State of Ohio filed a Reply in Support of its Motion to Dismiss (ECF No. 24), and the City of Columbus filed a Reply in Support of its Motion to Dismiss. (ECF No. 25.) On March 7, 2017, Plaintiff filed a Sur-Reply to the State of Ohio's Reply (ECF No. 28), and a Sur-Reply to the City of Columbus' Reply (ECF No. 29).

On March 2, 2017, Defendant Franklin County Sheriff's Office filed a Motion to File a Motion to Dismiss *Instanter* (ECF No. 26), which this Court granted on March 28, 2017 (ECF No. 33). The Court directed the Clerk to file Franklin County's Motion to Dismiss that was attached to the *Instanter* Motion. (ECF No. 34.) Before this Court ruled on Franklin County's Motion to File a Motion to Dismiss, Plaintiff filed a Memorandum in Opposition to the Motion to Dismiss that was attached to the *Instanter* Motion. (ECF No. 32.) On March 29, 2017, Franklin County filed a Reply in Support of its Motion to Dismiss. (ECF No. 35.)

On March 17, 2017, April 13, 2017, May 5, 2017, June 2, 2017, and July 24, 2017, Plaintiff filed Affidavits. (ECF Nos. 31, 36–39.) In these Affidavits, Plaintiff offers over 100, single-spaced pages containing averments that appear to be in support of the allegations she has

2

made in her Complaint and arguments she makes in her Memoranda in Opposition and her Sur-Replies.

On September 19, 2017, this Court granted Defendant State of Ohio's Motion to Dismiss, Defendant City of Columbus' Motion to Dismiss, Defendant the United States of America's Motion to Dismiss, and Defendant Franklin County Sheriff's Office's Motion to Dismiss. (ECF No. 46.) Only Defendants the City of Upper Arlington Division of Police and Defendant Police Officer Gregory Ellifritz remain. On August 1, 2017, Defendants filed a Motion for Summary Judgment on Plaintiffs' remaining claims for false arrest and excessive force. (ECF No. 42.) Plaintiff has since filed a Memorandum in Opposition and Sur-reply in support of her Memorandum in Opposition. (ECF Nos. 44, 47.)

The Court will first address Plaintiff's Objection and Supplemental Memorandum in Support of her Objection to the Court's Opinion and Order on Defendants' Motion to Dismiss, which the Court construes as a Motion for Reconsideration.

**B. Factual Background**

Plaintiff alleges a long history with police officers, claiming that she has been brutalized by local police officers over the years 1995, 2010, and 2015, with the 1995 and 2010 incidents documented in prior litigation that was filed before this Court as *Triplett-Fazzone v. City of Columbus Division of Police, et al.*, Case No. 2:12-cv-331, ("*Triplett-Fazzone I*"). (Compl. ¶¶ 11, 29–30, 41–60.) In *Triplett-Fazzone I*, Plaintiff received an adverse judgment, and exhausted her appeals. (ECF No. 1, ¶¶ 11, 25, 30, 32, 33.) The new allegations in the instant case are based on an incident in October 2015, in which an Upper Arlington police officer cited Plaintiff for speeding. (*Id.* at ¶¶ 41–63.)

Although Plaintiff's precise claims in her Complaint are difficult to make out, she repeatedly asserts that the federal Violent Crime Control and Law Enforcement Act of 1994 is unconstitutional. (Compl. ¶¶ 24-27, 37, 39, 71.) She contends the law is "unconstitutional in its entirety because it is an 'unmanned,' 'unmanaged,' 'highly improper,' and 'ignorant' and therefore 'unethical toward the delicate nature of life' method of police control that has contributed to national policing deaths (citizens v. police) (police v. citizens) all the while, damaging Plaintiff's life repetitively (1995, 2010, 2015)." (*Id.* ¶ 24.) Plaintiff also alleges that the Violence Against Women Act is an "opposing legal platform" that should provide her relief. (*Compl.* ¶¶ 6–11, 27.) She seeks a declaration that Defendants "are liable in some way, shape or form" and requests $150 million in damages. (*Id.* at 11.[1])

The claims against Defendant the City of Upper Arlington Police Division and Defendant Gregory Ellifritz ("Officer Ellifritz") arose on October 22, 2015, when Plaintiff was stopped by Officer Ellifritz for exceeding the posted speed limit of 25 miles per hour. (Ellifritz Aff. ¶ 5, ECF No. 42-1.) Officer Ellifritz issued Plaintiff a citation for speeding and informed her that, because it was her third moving violation within one year, he could write the citation as a fourth degree misdemeanor. (Dash Cam Video at 15:24:19–15:24:24.) Officer Ellifritz opted not to issue the citation as a misdemeanor. (Ellifritz Aff ¶ 9.) Rather, Officer Ellifritz explained to Plaintiff that because it was her third moving violation is one year, she would need to appear in court before a judge. (Dash Cam Video at 15:24:45–15:24:25.)

Officer Ellifritz then requested that Plaintiff sign the citation to acknowledge her obligation to appear in court. (Dash Cam Video at 15:25:42.) Plaintiff refused. (Dash Cam Video at 15:25:45.) Officer Ellifritz informed Plaintiff that if she did not sign the citation

---

[1] References to page numbers in Plaintiff's documents refer to those numbers generated by the Court's electronic filing system.

4

acknowledging her obligation to appear in front of a judge, she would be arrested. (Dash Cam Video at 15:25:49.) Plaintiff refused again, and then one more time before Officer Ellifritz told her she was under arrest. (Dash Cam Video 15:26:08–15:26:13.)

Plaintiff refused to get out of her vehicle and instead locked her door. (Dash Cam 15:26:14; Ellifritz Aff. ¶ 13.) Plaintiff's driver's side window was rolled down. (15:26:14–15:26:33.) Officer Ellifritz reached through the window and unlocked the driver's side door from the inside. (Elllifritz Aff. ¶ 14.) He then escorted Plaintiff from her vehicle before handcuffing her. (Dash Cam 15:26:29–15:26:46.) After handcuffing her, Officer Ellifritz double locked her handcuffs, which he testified prevents the handcuffs from tightening further around the wrist. (Dash Cam Video 15:27:13; Ellifritz Aff. ¶ 19.)

The moment Officer Ellifritz removed Plaintiff from her car and she saw her husband nearby she became hysterical, screaming that she "would not sign the ticket." (Dash Cam Video at 15:26:38.) While Plaintiff continued to yell, Office Ellifritz checked Plaintiff for weapons by placing her against her car before putting her in the back of his police vehicle. (Dash Cam Video at 15:27:13; Ellifritz Aff. ¶ 17.) Plaintiff's husband had arrived at the scene to bring Plaintiff her insurance card. (Ellifritz Aff. ¶16.) Officer Ellifritz explained to Plaintiff's husband that if Plaintiff refused to sign the ticket it is a requirement that she post bond, but that if he could convince her to sign the ticket she would be released. (Ellifritz Aff. ¶ 17.)

After speaking to her husband and another responding officer, Plaintiff agreed to sign the ticket and was released from police custody. (Ellifritz Aff. ¶ 18.)

5

## II. MOTION FOR RECONSIDERATION

Plaintiff asks the Court to reconsider its dismissal of the United States of America, the State of Ohio, the City of Columbus Division of Police, and the Franklin County Sheriff's Department.

### A. Standard of Review

Federal Rule of Civil Procedure 59(e) allows district courts to correct their own errors, "sparing the parties and appellate courts the burden of unnecessary appellate proceedings." *Howard v. United States*, 533 F.3d 472, 475 (6th Cir. 2008). The decision of whether to grant relief under Rule 59(e) is left to the district court's sound discretion. *In re Ford Motor Co. Securities Litigation, Class Action*, 381 F.3d 563, 573 (6th Cir. 2004). Such a motion will generally be granted only if the district court made a clear error of law, if there is an intervening change in the controlling law, or if granting the motion will prevent manifest injustice. *GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999). A Rule 59(e) motion is not properly used as a vehicle to re-hash old arguments or to advance positions that could have been argued earlier, but were not. *Sault Ste. Marie Tribe of Indian Tribes v. Engler*, 146 F.3d 367, 374 (6th Cir. 1998). "Neither should it be used as a vehicle for submitting evidence which in the exercise of reasonable diligence could have been submitted before." *Frontera v. City of Columbus*, No. 2:06-cv-1046, 2009 U.S. Dist. LEXIS 82745, at *5 (S.D. Ohio Sept. 8, 2009), *aff'd sub nom. Frontera v. City of Columbus Div. of Police*, 395 F. App'x 191 (6th Cir. 2010).

### B. Discussion

Plaintiff requests that the Court reconsider its Opinion and Order (ECF No. 46), which granted Defendants', United States of America, the State of Ohio, the City of Columbus Division

6

of Police, and the Franklin County Sheriff's Department, motions to dismiss. As with her Complaint, Plaintiff's Motion for Reconsideration and Supplemental Motion are difficult to follow. Plaintiff appears to take issue with the Court's Opinion because the Opinion did not explicitly address Plaintiff's seven affidavits and it declined to exercise supplemental jurisdiction over Plaintiff's state-law claims, dismissing those claims without prejudice. The Court, explicitly dealt with all dispositive issues and implicitly addressed all extrinsic issues and all evidence. Accepting as true all well-pleaded facts, Plaintiff failed to state a claim against the dismissed Defendants.

Having reviewed Plaintiff's Motion for Reconsideration and Supplemental Motion, Plaintiff does not raise any issues that impact the previous decision. For example, at one point Plaintiff argues that "[f]ailure to assert claims, cannot be waived, by failure to assert them" in regards to the Undersigned's decision to decline to exercise supplemental jurisdiction over the remaining state law claims. (Mot. for Reconsideration ¶ 2, ECF No. 48.) Plaintiff does not explain what issue she has with the Undersigned's decision. As with her Complaint where she spent multiple pages discussing the Violence Against Women Act, Plaintiff once again reiterates the same arguments. (Suppl. at 3, ECF No. 49.)

Finally, Plaintiff repeatedly notes that the Court did not address the fact that she intends to pursue tort claims under the Federal Tort Claims Act against the United States. The Court indeed considered all of Plaintiff's claims, but as Plaintiff did not assert a claim under the Federal Tort Claims Act, there was no claim to consider. (See Compl. ECF No. 1.) The only time Plaintiff mentioned the Federal Tort Claims act was in the case caption where she stated "United States of America, Defendant Federal Tort Claims Act Litigation Section Washington D.C. 20515." (Compl. at 1.) This falls short of the Federal Rule of Civil Procedure 8, which

requires "a short and plain statement of the claim showing that the pleader is entitled to relief." F.R.C.P. 8(a)(2). As Plaintiff failed to state a claim under the Federal Tort Claims Act for which relief may be granted, the Court did not err.

Thus, as the Court made no clear error of law, no intervening change in the controlling law took place, and because granting the Motion for Reconsideration will not prevent manifest injustice, the Court thus **DENIES** Plaintiff's Motion for Reconsideration.

### III. MOTION FOR SUMMARY JUDGMENT

The remaining Defendants move for summary judgment on all counts.

**A. Standard of Review**

Summary judgment is appropriate "if the movant shows that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court may therefore grant a motion for summary judgment if the nonmoving party who has the burden of proof at trial fails to make a showing sufficient to establish the existence of an element that is essential to that party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The "party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions" of the record which demonstrate "the absence of a genuine issue of material fact." *Celotex*, 477 U.S. at 323. The burden then shifts to the nonmoving party who "must set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56(e)). "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255 (citing *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 158–59 (1970)). A genuine issue of material fact exists "if the evidence is

such that a reasonable jury could return a verdict for the nonmoving party." *Id.* at 248; *see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986) (The requirement that a dispute be "genuine" means that there must be more than "some metaphysical doubt as to the material facts."). Consequently, the central issue is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Hamad v. Woodcrest Condo. Ass'n*, 328 F.3d 224, 234–35 (6th Cir. 2003) (quoting *Anderson*, 477 U.S. at 251–52).

A *pro se* litigant's pleadings are to be construed liberally and held to a less stringent standard than are formal pleadings drafted by lawyers. *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). A court should make a reasonable attempt to read the pleadings of a *pro se* litigant to state a valid claim on which the plaintiff could prevail, despite any failure to cite proper legal authority, confusion of various legal theories, poor syntax and sentence construction, or unfamiliarity with pleading requirements. *Ashiegbu v. Purviance*, 74 F. Supp. 2d 740, 749 (S.D. Ohio 1998) (citing *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991)). "This standard does not mean, however, that *pro se* plaintiffs are entitled to take every case to trial." *Id.* (citing *Pilgrim v. Littlefield*, 92 F.3d 413, 416 (6th Cir. 1996)). "Indeed, courts should not assume the role of advocate for the *pro se* litigant." *Id.* (citing *Hall*, 935 F.2d at 1110).

**B. Discussion**

Recognizing that Plaintiff is proceeding without the assistance of counsel, the Court has reviewed all of the documents filed by her, including the multiple affidavits, and the additional memoranda in opposition. (ECF Nos. 44, 47.)

9

A liberal construction of Plaintiff's claims reveals that she seeks relief under 42 U.S.C. § 1983, alleging Officer Ellifritz unlawfully arrested her and used excessive force in the process.[2] To prevail on a claim brought under § 1983, a plaintiff must prove that (1) she was deprived of a right secured by the Constitution or laws of the United States and (2) that the deprivation was caused by a person acting under color of law. *Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015). Defendants move for judgment as a matter of law, asserting that Officer Ellifritz did not violate any of Plaintiff's constitutional guarantees.

### 1. False Arrest

A false arrest claim implicates "the Fourth Amendment right to be arrested only upon probable cause." *Anderson v. Theirbert*, Case No. 2:15-cv-771, 2016 U.S. Dist. LEXIS 108528, at *8 (S.D. Ohio August 16, 2016) (quoting *Crockett v. Cumberland Coll.*, 316 F.3d 571, 579–80 (6th Cir. 2003). Thus, to prevail, a plaintiff must prove that the arresting officer lacked probable cause when he or she made the arrest. *Sykes v. Anderson*, 625 F.3d 294, 305 (6th Cir. 2010) (citing *Voyticky v. Village of Timberlake, Ohio*, 412 F.3d 669, 677 (6th Cir. 2005)).

Probable cause exists when the police have "reasonably trustworthy information . . . sufficient to warrant a prudent man in believing that the [suspect] had committed or was committing an offense." *Gardenshire v. Schubert*, 205 F.3d 303, 315 (6th Cir. 2000).

Under Ohio Revised Code § 2935.26(A), when issuing a minor misdemeanor citation, a law enforcement officer is authorized to arrest the offender but shall refrain from doing so unless for one, "the offender refuses to sign the citation." O.R.C. § 2935.26(A)(3). It is undisputed that Plaintiff pled guilty to the minor misdemeanor of speeding. Upper Arlington City Code §§

---

[2] Plaintiff also attempts to reargue claims that have already been dismissed or were not raised of in the first instance. (*See* Mem. in Opp. at 7.) While the Court has read her arguments, it declines to readdress already disposed of claims that have not been alleged in this action.

353.05, 315.99(A); (Defs.' Exhibit 2, at 3.) Significantly, a finding of guilt in the underlying criminal prosecution "estop[s] plaintiff[] from . . . asserting in federal court that the defendant police officers acted without probable cause." *Walker v. Schaeffer*, 854 F.2d 138, 142 (6th Cir. 1988) (noting that "[a] guilty finding in a criminal proceeding, whether by trial or plea, constitutes an absolute defense to an action for false arrest or false imprisonment") (alteration in original) (citation omitted). Accordingly, Plaintiff is estopped from disputing whether Officer Ellifritz had probable cause to issue her a citation.[3]

Plaintiff disputes whether she refused to sign the driving citation and therefore whether Office Ellifritz had probable cause to arrest her. She contends that "Officer Ellifritz did not have Probable Cause to Arrest [sic] this Plaintiff. Plaintiff was completely operating under Good Faith. Plaintiff never raised her voice, made antagonistic statements, or was never uncooperative." (Mem. in Opp. at 4, ECF No. 44.) The video evidence, however, proves otherwise. The United States Court of Appeals for the Sixth Circuit has recognized that "a court may properly consider videotape evidence at the summary-judgment stage." *Griffin v. Hardrick*, 604 F.3d 949, 954 (6th Cir. 2010); *see also, Dunn v. Matatall*, 549 F.3d 348, 350 (6th Cir. 2008) (affirming grant of summary judgment to moving party based upon undisputed facts recorded on videotape). The video contradicts Plaintiff's account and shows her screaming hysterically (Dash Cam Video at 15:26:38) and refusing to sign the ticket. (Dash Cam Video at 15:25:45.) It also shows Officer Ellifritz repeatedly warning her that a refusal to sign the ticket would result in her arrest. (Dash Cam Video at 15:25:49.) Plaintiff, still hysterical, continued to refuse to sign

---

[3] In her Sur-reply in Support of the Memorandum in Opposition (ECF No. 47.) Plaintiff attempts to argue against the initial traffic stop making statements such as "Officer Ellifritz violated Plaintiff's Fourth Amendment rights because the stop was a pretext to an illegal seizure" without specifying what seizure she is referring to. (*Id.* at 9.) Because Plaintiff is estopped from asserting Officer Ellifritz did not have probable cause to initially pull her over for speeding through her guilty plea, the Court will not address arguments such as this one.

the citation. Accordingly, the video evidence refutes any of Plaintiff's claims. *Scott v. Harris*, 550 U.S. 372, 380 (2007) ("When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment.").

Under Ohio Revised Code § 2935.26(A), Plaintiff's refusal to sign the citation gave Officer Ellifritz probable cause for her arrest. Because Plaintiff has not established a Fourth Amendment violation, Officer Ellifritz is entitled to summary judgment on her claim for false arrest.

### 2. Excessive Force

Plaintiff also asserts that Officer Ellifritz utilized excessive force on her while making the arrest. Claims that law enforcement officers used excessive force during an arrest are analyzed under the Fourth Amendment and its "reasonableness" standard. *Graham v. Connor*, 490 U.S. 386, 395 (1989). To determine the reasonableness of the force used, courts must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests' against countervailing governmental interests at stake." *Id.* at 396. The reasonableness standard considers the level of force needed in light of the circumstances of a particular case. *Id.* Circumstances to be considered include the severity of the criminal conduct at issue, whether the suspect posed an immediate threat to the safety of the public and the officer, and whether the suspect was actively resisting arrest. *Id.*

When evaluating the circumstances of a particular use of force, "the Court does not second-guess an officer's judgment from the comfort of chambers." *Belford v. City of Akron*, Case No. 5:05-cv-2650, 2006 U.S. Dist. LEXIS 57704, at *10 (N.D. Ohio Aug. 16, 2006). Rather, reasonableness is measured by "reasonableness at the moment" force is used, "judged

from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396.

Plaintiff, does not explain what conduct she alleges constituted excessive force. Instead, she asserts excessive force took place because that she can be heard "crying/sobbing" on the dash cam video. In reference to the audible crying on the video, Plaintiff states "[t]his is the point in time where Plaintiff had just experienced a deceitfully and concealed effort by Officer Ellifritz to use Excessive Force on this Plaintiff. Officer Ellifritz did not make a sound during this Excessive Force abuse, which is why only Plaintiff's escalation of crying/sobbing is the only indicator." (Mem. in Opp. at 13) (alteration omitted).

In her supplemental motion to the Memorandum in Opposition, Plaintiff mentions excessive force and notes "By the time the superior's order to 'wait' dialogue occurred, Plaintiff was already "You're not going to get violent with me"/ "You're not going to arrest me" dragged out of her daughter's car, arrested, publicly humiliated in the community in which Plt. Told Officer Ellifritz she 'grew up in' terrorized, and inflicted with Excessive Force handcuff brutality for the 3rd time."[4] (Suppl. Mem. in Opp. at 14, ECF No. 47.)

Liberally reading Plaintiff's briefing, it appears she claims two instances of excessive force: that she was taken from her car and that she was handcuffed.

### a. Removal From Vehicle

To begin with, the video evidence clearly disputes Plaintiff's claim that Officer Ellifritz utilized excessive force when escorting her out of her car. When Officer Ellifritz told Plaintiff she was under arrest, she locked her car and refused to exit the vehicle as asked. Officer Ellifritz reached in through the open window and unlocked the door. He then took Plaintiff's arm and

---

[4] The Court notes that when stating "the 3rd time" it appears Plaintiff is referencing prior arrests with other officers.

13

removed her from the car. Based on Plaintiff's refusal to leave to the vehicle, it was reasonable for Officer Ellifritz to assist her out of it. As evidenced on the video, Officer Ellifritz used only the amount of force necessary to remove Plaintiff from the car. To remove Plaintiff from her car, he took hold of her hand and helped her out. (Dash Cam 15:26:29–15:26:46.) Plaintiff appears calm while being escorted from the car until she saw her husband. At the point she saw her husband, she began belligerently yelling. (Dash Cam Video at 15:26:38.) Thus, any claim regarding her removal from the vehicle fails. *Collins v. Nagle*, 892 F.2d 489, 496 (6th Cir.1989) (An officer is not liable for "[e]very push and shove an officer makes during the arrest.") (citation omitted).

### b. Handcuffing

It appears to the Court that Plaintiff also asserts Officer Ellifritz handcuffed her unreasonably. In order for a handcuffing claim to survive summary judgment a plaintiff must offer sufficient evidence to create a genuine issue of material fact that: "(1) he or she complained the handcuffs were too tight; (2) the officer ignored those complaints; and (3) the plaintiff experienced "some physical injury" resulting from the handcuffing. *Baynes v. Cleland*, 799 F.3d 600, 609 (6th Cir. 2015) (quoting *Morrison v. Bd. Of Trs.*, 583 F.3d 394, 402 (6th Cir. 2009))

Plaintiff does not present evidence or argument in support of any of the elements to present a claim for excessive force due to handcuffing. As evidenced in the dash cam video, Plaintiff did not complain a single time that the handcuffs were too tight. Plaintiff does not argue that she complained to Officer Ellifritz that her handcuffs were too tight or that Officer Ellifritz should have known the handcuffs were too tight. Indeed, Officer Ellifritz testified to, and can be seen in the dash cam video, "double locking" the handcuffs on Plaintiff's wrists. Defendants explain that double locking handcuffs is an affirmative measure to ensure the handcuffs do not

14

get too tight by locking the handcuffs such that they cannot tighten without a key. (Mot. Summ. J. at 8, ECF No. 42.) Viewing the facts in the light most favorable to the Plaintiff, no genuine dispute of fact remains for a jury to decide. Accordingly, judgment on Plaintiff's claim for excessive force is **GRANTED**.

### 3. Claims Against City of Upper Arlington Division of Police

Plaintiff also brings claims against the City of Upper Arlington Division of Police ("Upper Arlington Police Division"). The City of Upper Arlington Police Division asserts that it cannot be held liable independently of the City of Upper Arlington. The Court agrees, "police departments are not *sui juris*; they are merely sub-units of the municipalities they serve." *Jones v. Marcum*, 197 F. Supp. 2d 991, 997 (S.D. Ohio 2002) (citing *Williams v. Dayton Police Dept.*, 680 F. Supp. 1075, 1080 (S.D. Ohio 1987)). Plaintiff did not bring claims against the City of Upper Arlington. Even if she had properly named the City of Upper Arlington, Plaintiff does not allege any specific wrongful acts by the City of Upper Arlington and "there is no vicarious liability under 1983." *Douglas v. Malette*, Case No. 82-1555, 1984 U.S. App. LEXIS 14471, at *2 (6th Cir. Mar. 27, 1984) (citing *Butz v. Economous*, 438 U.S. 478 (1978); *see also City of Canton, Ohio v. Harris*, 489 U.S. 378, 385 (1989).

Section 1983 does impose liability on a municipality when, as the Supreme Court of the United States explained in *Monell*, the municipality's official policy, practice or custom, causes an employee to violate another's constitutional rights. *Monell*, 436 U.S. at 691; *Harris*, 489 U.S. at 386 ("In *Monell v. New York City Dept. of Social Services*, 436 U.S. 658 [] (1978), we decided that a municipality can be found liable under § 1983 only where the municipality itself causes the constitutional violation at issue."). A government entity, therefore, may be liable under 42 U.S.C. § 1983 if a plaintiff demonstrates that the execution of the entity's custom or policy caused the alleged deprivation of the plaintiff's rights. To succeed, the plaintiff must demonstrate a direct causal link between the custom or policy and the constitutional deprivation by showing that the particular injury alleged was caused by the execution of the particular

15

custom or policy. *Garner v. Memphis Police Dep't*, 8 F.3d 358, 364 (6th Cir. 1993), cert. denied, 510 U.S. 1177 (1994). A "custom" may be the basis for government liability "if it is so permanent and well settled as to constitute a custom or usage with the force of law." *Monell*, 436 U.S. at 69–91. Likewise, a "policy has been defined as formal rules or understanding – often but not always committed to writing – that are intended to, and do, establish fixed plans of action to be followed under similar circumstances consistently and over time." *Wingrover v. Forshey*, 230 F. Supp. 2d 808, 828 (S.D. Ohio 2002) (internal citations removed) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480–81 (1986)).

Plaintiff alleges unconstitutional acts on behalf of police, including allegations against the Cleveland police department (Supp. Mem. in Opp. at 10, ECF No. 47) and other police departments in Columbus. (Supp. Mem. in Opp. at 11.) She alleges that ". . . I'm the one whose life has been destroyed by police officers (plural) and I can't handle this." (Mem. in Opp. at 12.) She does not, however, allege a custom by the City of Upper Arlington of tolerance or acquiescence of constitutional-rights violations. In fact, Plaintiff states that a different Upper Arlington "stop sign officer" "was still receptive and diligent enough for Upper Arlington" and that "this Plaintiff did not have 'signing the ticket' traffic stop problems with the other two (2) Upper Arlington police traffic stop tickets Plaintiff received approximately 6 months before encountering Officer Ellifritz." (*Id.*) Plaintiff thus fails to state a cognizable *Monell* claim. Accordingly, judgment is **GRANTED** for the City of Upper Arlington Police Department.

### 4. First Amendment Retaliation

It appears out of an abundance of caution Defendants also contend that if Plaintiff seeks to bring a claim for First Amendment retaliation, it also fails. It is not readily apparent in Plaintiff's Complaint or memorandums in opposition to summary judgment that she brings this claim. However, if indeed she does seek to pursue a claim for First Amendment retaliation against Defendants, she has failed to provide any support for the claim. Judgement is, therefore, **GRANTED** for Defendants.

To succeed on a claim for First Amendment Retaliation, Plaintiff must establish that: (1) she was engaging in protected conduct; (2) an adverse action was taken against her that would deter a person of ordinary firmness from continuing to engage in that conduct; and (3) the adverse action was motivated at least in part by the plaintiff's protected conduct. *Thaddeus-X v. Blatter*, 175 F.3d 378, 394 (6th Cir. 1999); *see also Anderson v. Lawless*, Case No. 2:17-cv-1057, 2017 U.S. Dist. LEXIS 209814, at *13 (S.D. Ohio Dec. 21, 2017.)

Plaintiff offers neither evidence of what protected conduct she engaged in nor any evidence that Officer Ellifritz was motivated by any protected conduct. Officer Ellifritz temporarily arrested Plaintiff after she refused to sign the citation. As discussed in-depth above, Officer Ellifritz had probable cause to arrest her. Accordingly, judgment is **GRANTED** for Defendants on any First Amendment Retaliation claim brought by Plaintiff.

### 5. Remaining State Law Claims

The Court's grant of summary judgment on the § 1983 claims leaves before the Court only Plaintiff's state law claims. Where, as here, a district court has dismissed all of the claims over which it had original jurisdiction, the court may decline to exercise supplemental jurisdiction over the remaining claims. *See* 28 U.S.C. § 1367(c)(3). The decision whether to exercise supplemental jurisdiction over a claim is purely discretionary and depends on judicial economy, convenience, fairness, and comity. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *Musson Theatrical, Inc. v. Fed. Express Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996). As a rule of thumb though, "[w]hen all federal claims are dismissed before trial, the balance of considerations usually will point to dismissing the state law claims." *Musson Theatrical, Inc.*, 89 F.3d at 1254–55.

After analyzing the relevant considerations, the Court concludes that it will decline to exercise supplemental jurisdiction over Plaintiffs' remaining state law claims. The case has not proceeded to trial yet. Moreover, this case implicates questions of Ohio, not federal, law. These issues as well as the other state law issues are best resolved by an Ohio court.

Because the Court declines to exercise supplemental jurisdiction over Plaintiff's remaining state law claims, the parties' motion for summary judgment on those claims are **DENIED as moot**.

### IV.

Based on the foregoing, the Court **GRANTS** Defendants Motion for Summary Judgment and **DENIES** the Motion for Reconsideration.

**IT IS SO ORDERED.**

3-9-2018
**DATE**

**EDMUND A. SARGUS, JR.**
**CHIEF UNITED STATES DISTRICT JUDGE**